IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOE HUNSINGER,                    §
                                  §
            Plaintiff,            §
                                  §   Civil Action No. 3:13-CV-0988-D
VS.                               §
                                  §
SKO BRENNER AMERICAN, INC.,       §
                                  §
            Defendant.            §

MEMORANDUM OPINION
AND ORDER

This is an action by *pro se* plaintiff Joe Hunsinger ("Hunsinger") against defendant SKO Brenner American, Inc. ("SKO") for claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. § 392.001 *et seq.* (West 2006); and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (West 2011).  SKO moves for summary judgment on all claims.  Hunsinger moves for a continuance under Fed. R. Civ. P. 56(d) and for leave to amend his complaint.  The court concludes that Hunsinger has failed to show how additional discovery will allow him to create a genuine issue of material fact on any of his claims, that Hunsinger's motion for leave to amend should be denied, and that SKO is entitled to summary judgment on all of Hunsinger's claims.  The court therefore denies Hunsinger's Rule 56(d) motion and motion for leave to amend, grants SKO's motion for summary judgment, denies SKO's request for attorney's fees, and

dismisses this action by judgment filed today.

I

In March 2012 Hunsinger obtained a copy of his consumer credit report and noticed a "tradeline" with which he disagreed.[1]  A tradeline is an entry on a consumer credit report about a particular financial obligation, and it typically includes information identifying the creditor and the amount, age, and payment history of the debt.  This particular tradeline listed Primus Telecommunications, Inc. ("Primus") as the original creditor and SKO as the collection contact.  On March 13, 2012 Hunsinger sent SKO a letter disputing the debt reported on the tradeline and requesting that the debt be verified.  On April 4, 2012 Hunsinger sent a letter disputing the debt to TransUnion—the consumer credit agency that generated the credit report.  Trans Union received the letter on April 6, 2012.  On April 11, 2012—a mere five days later—TransUnion notified Hunsinger that it had deleted the tradeline.  On August 14, 2012 SKO sent Hunsinger a letter that referred to two accounts with Lingo, Inc. (the "SKO Letter").  D. App. 8.  Although the parties do not address the relationship between Lingo, Inc. ("Lingo") and Primus, it appears that Lingo is a subsidiary of Primus.  The SKO Letter states, in pertinent part: "We have notified [TransUnion] to remove these accounts from their records." *Id.*  Below the signature line and set off with two

---

[1]In deciding this motion, the court views the evidence in the light most favorable to Hunsinger as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

- 2 -

asterisks, the letter includes the following statement: "This is an attempt to collect a debt and any information obtained will be used for that purpose only." *Id.*

When Hunsinger initially filed suit, he alleged various claims under the FDCPA, FCRA, TDCPA, and DTPA. He later amended his complaint, and SKO moved to dismiss. The court granted the motion, but also granted Hunsinger leave to replead. *Hunsinger v. SKO Brenner Am., Inc.*, 2013 WL 3949023, at *1 (N.D. Tex. Aug. 1, 2013) (Fitzwater, C.J.) ("*Hunsinger I*"). Hunsinger then filed his "third amended complaint."[2] SKO moves for summary judgment on all of Hunsinger's claims. Hunsinger opposes the motion, and he also moves for a continuance under Rule 56(d) and for leave to amend his complaint. SKO opposes Hunsinger's Rule 56(d) motion and motion for leave to amend. Both parties have moved to strike certain evidence.

## II

Because Hunsinger will bear the burden of proof on his claims under the FDCPA, FCRA, TDCA, and DTPA, SKO can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the claim in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once SKO does so, Hunsinger must go beyond his pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

---

[2]Although Hunsinger styles this pleading as his "third amended complaint," it is actually only his second amended complaint. The court refers to the complaint as Hunsinger's "third amended complaint," however, because Hunsinger and SKO both use this designation.

An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict in Hunsinger's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Hunsinger's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if Hunsinger fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court first considers the ground of SKO's summary judgment motion that is addressed to Hunsinger's FDCPA claim.

A

SKO moves for summary judgment on Hunsinger's FDCPA claim, contending that Hunsinger's request for verification was untimely, or, alternatively, that SKO is not liable because it did not continue to collect after receiving Hunsinger's verification request. Hunsinger responds that his verification request does not have to be timely, and that SKO continued collection activity against him because (1) the tradeline remained on his credit report after he initially disputed the debt with SKO, and (2) the SKO Letter sent on August 14, 2012 constituted collection activity against him.

B

"The purpose of the [FDCPA] is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State

- 4 -

action to protect consumers against debt collection abuses.'" *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012) (quoting 15 U.S.C. § 1692(e)).

> Debt collectors are required, within five days of the initial communication regarding a debt, to provide consumers with a written notice that contains this information: (1) 'the amount of the debt'; (2) 'the name of the creditor to whom the debt is owed'; (3) a statement that unless the consumer 'disputes the validity of the debt' within 30 days, the debt collector will assume the debt is valid; (4) a statement that if the consumer notifies the collector that the consumer is disputing the debt in writing within the 30 day period, 'the debt collector will obtain verification of the debt [from the creditor] . . . and a copy of [the] verification . . . will be mailed to the consumer'; and (5) 'a statement that, upon the consumer's written request,' the debt collector will give the consumer 'the name and address of the original creditor, if different from the current creditor.'

*Id.* (quoting 15 U.S.C. § 1692g(a)).  If the consumer does not notify the debt collector within 30 days that the debt is disputed, "the collector may assume the debt to be valid." *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999) (quoting *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996); 15 U.S.C. § 1692g(a)(3)) (internal quotation marks omitted).  But "[i]f the consumer notifies the debt collector in writing within the [30]-day period . . . that the debt . . . is disputed, . . . the debt collector shall cease collection of the debt . . . until the debt collector obtains verification of the debt or a copy of a judgment[.]" 15 U.S.C. § 1692g(b).

When a debt collector receives timely notice of a disputed debt by a consumer, it has a choice: it may either provide the requested verification, or it may cease all collection activities. *See Bashore v. Resurgent Capital Servs., L.P.*, 452 Fed. Appx. 522, 524 (5th Cir.

2011) (per curiam) ("Nor does FDCPA require the debt collector to respond by letter of verification to the consumer's letter of dispute; the debt collector is instead required only to cease collection of the debt until verification of the debt is obtained." (citing 15 U.S.C. § 1692g(b)); *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 940 (9th Cir. 2007) (per curiam); *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1031-32 (6th Cir. 1992).   In other words, a debt collector who receives timely notice of a dispute does not violate the FDCPA if it abandons its collection efforts—even if it fails to send the requested verification. *See, e.g., Jang*, 122 F.3d at 483 ("When a collection agency cannot verify a debt, the statute allows the debt collector to cease all collection activities at that point without incurring any liability for the mistake.").

"[T]o prevail on [his] FDCPA claim, [Hunsinger] must prove the following: (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Browne v. Portfolio Recovery Assocs., Inc.*, 2013 WL 871966, at *4 (S.D. Tex. Mar. 7, 2013) (citing *Stewart v. Alonzo*, 2009 WL 174938, at *2 (S.D. Tex. Jan. 26, 2009)).   SKO does not dispute that it is a debt collector within the meaning of the FDCPA (the second element).   It focuses on the third element, contending for the following two reasons that it did not engage in an act or omission prohibited by the FDCPA: (1) it did not have a duty to respond to Hunsinger's debt-verification request because the request was sent more than 30 days after it first mailed Hunsinger notice of the debt, and (2) it did not

engage in collection activities after receiving Hunsinger's debt-verification request.[3]

## C

### 1

The court holds that Hunsinger has failed to create a genuine issue of material fact that he timely requested verification under 15 U.S.C. § 1692g(a) and (b). SKO has produced substantial, uncontroverted evidence that it sent Hunsinger notice of the debt on July 2, 2008. In particular, it has produced the affidavit of Jon Lunn ("Lunn"), SKO's Chief Operating Officer, who manages the organization's custodians of records and its records-retention process.[4] Lunn avers that SKO sent Hunsinger a letter on July 2, 2008 notifying him that

---

[3]SKO's second contention arguably negates the first element as well. But SKO implicitly concedes that Hunsinger was, at least initially, the target of collection activity when it first sent him notice of the debt in 2008. The court therefore considers SKO's argument as a challenge to the third element and does not decide the question whether Hunsinger can prove the first element.

[4]Hunsinger moves under Rule 56(c)(4) and Fed. R. Evid. 602 and 1002 to strike SKO's evidence. The court denies the motion to the extent it is addressed to Lunn's affidavit. Lunn avers that he is the Chief Operating Officer of SKO, that he manages the custodians of records, that he oversees the records management and retention process at the organization, and that he has reviewed the records of SKO regarding Hunsinger's account. He states that he is "personally acquainted with the facts," D. App. 1, and that every statement made within the affidavit is "within [his] personal knowledge," *id.* at 4. For the most part, his testimony is offered merely to authenticate several exhibits, such as the copy of the letter SKO sent Hunsinger in 2008. Hunsinger does not challenge the accuracy or authenticity of any of the underlying exhibits. The only testimony not offered to authenticate the exhibits is Lunn's testimony that SKO does not have any record of a telephone conversation with Hunsinger in 2008, that SKO closed the account in 2009 because it could not obtain a telephone number for Hunsinger, that SKO did not take any collection action against Hunsinger after March 13, 2012, that SKO reported the account to TransUnion in 2008 and did not communicate with TransUnion again until it asked TransUnion to delete the account on August 14, 2012, and that the records of SKO do not show that SKO received

SKO had been retained to collect the debt related to the disputed tradeline.[5] SKO has also produced a copy of the letter.[6] It is undisputed that the letter contains the information required by 15 U.S.C. § 1692g(a).[7] By his own admission, Hunsinger did not contact SKO to dispute the debt until March 13, 2012—more than three years after SKO sent its initial notice. *See* 3d Am. Compl. ¶ 6 ("Plaintiff sent Defendant a letter requesting Validation, dated March 13, 2012 via U.S. Postal Service . . . with a notice dispute of an alleged debt that

---

any communication from TransUnion regarding a dispute by Hunsinger.

Lunn's affidavit satisfies Rule 56(c)(4) and Fed. R. Evid. 602 because it is made on personal knowledge, sets out facts that would be admissible in evidence, and shows that Lunn is competent to testify on the matters stated. Lunn's affidavit satisfies Fed. R. Evid. 1002 because none of his statements is offered to prove the contents of any particular exhibit. *See* Fed. R. Evid. 1002 (providing that original writing is required "in order to prove its contents").

[5]Lunn's affidavit actually states that the letter was sent "on or about *June* 2, 2008," but later in the same paragraph states that "[t]he letter . . . was sent on *July* 2, 2008." D. App. 2 (emphasis added). In its brief, SKO maintains that the letter was sent on *July* 2, 2008. *See* D. Br. 5 ("Defendant sent that notice on July 2, 2008."). Regardless whether the letter was sent on *June* 2, 2008 or *July* 2, 2008, it was still sent more than three years before Hunsinger sent notice to SKO disputing the debt and requesting validation.

[6]Although the copy of the letter is dated October 3, 2013, *see* D. App. 5, Lunn explains in his affidavit that this date is simply the date the copy was printed, *see id.* at 2. ("The letter bears an October 2013 date because our system automatically dates all letters the day they were printed. The letter sent to Mr. Hunsinger was sent on July 2, 2008.").

[7]In other words, Hunsinger has *not* alleged that SKO's initial notice violated the FDCPA for failure to provide the information required by 15 U.S.C. § 1692g(a). *See, e.g.,* *McMurray*, 687 F.3d at 668 ("A debt collector violates the FDCPA by failing to provide the information required by [§] 1692g(a)." (citing *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)).

was owed and requesting validation which the Defendant received on March 16, 2012.").[8]

In response, Hunsinger offers the conclusory assertion that his verification request did not have to be timely. He appears to rely on *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997), for the proposition that a consumer need not send notice disputing a debt within 30 days of receiving the initial notice from the debt collector. But *Chauncey* undercuts rather than supports Hunsinger's position. In that case the debt collector sent a letter to the consumer stating that "[u]nless the [debt collector] receive[s] a check or money order for the balance, in full, within [30] days from receipt of this letter, a decision to pursue other avenues to collect the amount due will be made." *Chauncey*, 118 F.3d at 518. The Seventh Circuit held that the debt collector violated § 1692g(a) because this language contradicted the other language in the letter informing the consumer of his right to dispute the debt within 30 days of receiving the debt-collection notice. *Id.* at 519. The court explained the contradiction this way: "[T]he letter required that plaintiff's payment be *received* within the 30-day period, thus requiring plaintiff to mail the payment prior to the thirtieth day to comply." *Id.* And the court concluded: "If we were to hold that the validation request must be received by the thirtieth day, we would be rewriting Section 1692g, which we are not entitled to do." *Id.* Hunsinger takes this sentence out of context, arguing that it means that there is no timeliness requirement *at all* on the part of a consumer

---

[8]Although in its motion to dismiss SKO challenged the timeliness of Hunsinger's request, the court in *Hunsinger I* assumed *arguendo* that Hunsinger made a timely request. *See Hunsinger I*, 2013 WL 3949023, at *3 ("Assuming *arguendo* that Hunsinger has plausibly alleged that he properly sought validation . . .").

who intends to dispute a debt.  But *Chauncey* does not suggest this, much less reach this conclusion.  Rather, it instructs that the consumer's validation request does not have to be *received by the debt collector* by the 30th day.  The case makes clear, however, that the request must still be *sent by the consumer* within 30 days.  *See id.* ("It is clear that Mr. Chauncey had the full thirty days to send his notification to defendant.").

Aside from his contention that there is no timeliness requirement under the FDCPA, Hunsinger does not otherwise respond to SKO's argument.  He does not, for example, assert that he failed to receive the July 2, 2008 debt-collection notice.[9]  Nor does he present any evidence that he sent any type of notice disputing the debt or requesting verification within 30 days of SKO's July 2, 2008 debt-collection notice.  Consequently, he has not designated any specific facts showing that there is a genuine issue for trial.  SKO is therefore entitled to summary judgment on Hunsinger's FDCPA claim because a reasonable trier of fact could not find that he timely complied with the requirements of § 1692g(a) and (b).  *See, e.g., Mahon*, 171 F.3d at 1202-03 ("For [plaintiffs'] request to have been effective, it had to be made within thirty days from the date they received the Notice from the Credit Bureau.  The [plaintiffs'] tardy request for verification of the debt, therefore, did not trigger any obligation

_____

[9]Even if Hunsinger had asserted that he did not receive the July 2, 2008 letter, SKO would still be entitled to summary judgment on the FDCPA claim.  "[S]ection 1692g(a) requires only that a Notice be 'sent' by a debt collector.  A debt collector need not establish actual receipt by the debtor."  *Mahon*, 171 F.3d at 1201.  And "[u]nder the common law Mailbox Rule, proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee."  *Id.* at 1202 (citation and internal quotation marks omitted).  Here, as in *Mahon*, Hunsinger has failed to adduce any evidence rebutting this presumption.  *See id.*

on the part of the Credit Bureau to verify the debt." (citation omitted)); *cf. Bashore*, 452 Fed. Appx. at 524 ("[The plaintiff's] allegation that [the defendant] failed to cease collection activities after notification of her dispute was rejected by the district court on the basis that [the plaintiff] did not allege she notified [the defendant] of the dispute within the 30-day period established by FDCPA." (citing 15 U.S.C. § 1692g(a)(3), (b)).

2

Alternatively, the court holds that Hunsinger has failed to create a genuine issue of material fact that SKO engaged in any collection activity after Hunsinger sent his verification request on March 13, 2012. Hunsinger relies on two pieces of evidence, neither of which creates a genuine issue for trial. The first is a copy of his credit report, as produced by Identity Guard, showing the disputed tradeline and his credit history as of March 19, 2012. P. App. 6. Hunsinger argues that this evidence shows that SKO violated the FDCPA because he sent his letter disputing the debt and requesting verification on March 13, 2012, and the tradeline remained on his credit report six days later. The court disagrees. The summary judgment record establishes that the disputed tradeline corresponds to the account that was previously assigned to SKO for collection in 2008—not a new account or any new collection activity by SKO. *Compare* P. App. 3 (credit report as of March 12, 2012 listing Primus tradeline with "date of status" as 10/31/2008), *with* P. App. 6 (credit report as of March 19, 2012 listing Primus tradeline with "date of status" as 10/31/2008).[10] SKO has produced

---

[10]SKO moves to strike, *inter alia*, these two documents, which appear to be copies of Hunsinger's credit report produced by Identity Guard. The court denies as moot SKO's

evidence that it actually closed the account in October 2009—several years *before* Hunsinger sent his notice disputing the debt—because it was unable to obtain a telephone number for Hunsinger.  That the tradeline remained on Hunsinger's credit report after he sent his request for verification to SKO does not indicate that SKO engaged in any collection activity against him.[11]  If it did, a debt collector would be liable for violating the FDCPA anytime a consumer sends a notice disputing a debt and the credit reporting agency does not almost *immediately* remove the account from the consumer's credit report.  Such an interpretation of the statute would lead to absurd results in cases, like this one, where the disputed account was promptly

_____

motion as to these documents because, even if considered, they do not create a genuine issue of material fact or alter the result reached in this decision.

   [11]A recurring theme in Hunsinger's response to summary judgment is the underlying premise that because the tradeline remained on his credit report after he sent notice disputing the debt and requesting verification, SKO must have engaged in "collection activity" against him.  *See, e.g.,* P. Br. 9 ("The fact is that the Defendant has remained in Plaintiff[']s Credit Profile in an attempt to collect a debt after they *claim* to have directed no further collection effort.").  The court disagrees.
   The FDCPA does not define "collection activity," and the Fifth Circuit has not addressed its meaning.  But even under an expansive definition of "collection activity" that includes reporting a disputed debt to a credit reporting agency, *see Purnell v. Arrow Financial Services, LLC*, 303 Fed. Appx. 297, 304 & n.5 (6th Cir. 2008) (per curiam) (assuming *arguendo* that reporting disputed debt to credit reporting agency constitutes "collection activity"), Hunsinger's claim would fail because he has not produced any evidence that SKO reported the account to TransUnion *after* he gave notice that he was disputing the debt.  Even viewing the evidence in the light most favorable to Hunsinger and drawing all reasonable inferences in his favor, the summary judgment record establishes that SKO reported the account to TransUnion in 2008—more than three years before Hunsinger contacted SKO and TransUnion to dispute the debt.  Based on this record, the only other communication between SKO and TransUnion occurred in August 2012, when SKO asked TransUnion to remove the tradeline from Hunsinger's credit report.  SKO's request that TransUnion *remove* the tradeline is the antithesis of "collection activity" under the FDCPA.

removed from the consumer's credit report.

The second piece of evidence on which Hunsinger relies (the SKO Letter) likewise fails to create a genuine issue of material fact that SKO engaged in collection activity after Hunsinger sent his March 13, 2012 letter to SKO. The SKO letter, which was sent to Hunsinger on August 14, 2012, explains that SKO notified TransUnion to remove the disputed account from Hunsinger's credit profile. At the bottom of the letter, below the signature line and set off with two asterisks, the letter contains the following statement: "This is an attempt to collect a debt and any information obtained will be used for that purpose only." D. App. 8. Hunsinger takes this statement out of context, contending that it is evidence of renewed collection activity against him by SKO. As this court explained in *Hunsinger I*:

> The body of the SKO Letter states in full: "We have notified [TransUnion] to remove these accounts from their records. You may follow up with [TransUnion] on their consumer hotline at [telephone number]. Thank you for bringing this matter to our attention." The SKO Letter nowhere indicates an amount that Hunsinger must pay, a date by when he must pay, to whom he must pay his debt, the consequences of not paying, or any other information associated with a communication intended to collect a debt. Instead, the SKO Letter states that SKO is seeking to *remove* the collection account from the credit reporting agency, and the language about collecting a debt is unambiguously standard print. The court accordingly concludes that, when read in context, Hunsinger's allegation that the SKO Letter stated it was "an attempt to collect a debt" is insufficient to state a plausible claim that the letter was a collection activity.

*Hunsinger I*, 2013 WL 3949023, at *3 (citations and footnote omitted). For the same reason, the court concludes that the SKO Letter is not evidence of collection activity by SKO.

Because Hunsinger has not produced evidence sufficient to create a genuine issue of material fact that SKO failed to cease collection activities after he sent his notice disputing the debt and requesting verification, a reasonable trier of fact could not find that SKO breached its duties under the FDCPA.   Accordingly, even if Hunsinger made a timely verification request, SKO is entitled to summary judgment dismissing Hunsinger's FDCPA claim.

IV

SKO moves for summary judgment on Hunsinger's FCRA claims, contending that they fail as a matter of law because the statutory provisions on which he relies do not create a private cause of action.   Hunsinger does not specifically address this argument in his response.

A

The court begins by clarifying the claims at issue.   In *Hunsinger I* the court noted the lack of clarity concerning the statutory basis for Hunsinger's FCRA claims, pointing out in a footnote that, "[t]o the extent Hunsinger intends to assert different claims than the ones the court identifies, he can clarify this when repleading."   *Hunsinger I*, 2013 WL 3949023, at *5 n.9.   Hunsinger later repleaded his FRCA claims.   In his third amended complaint, Hunsinger asserts two claims under the FRCA: (1) a claim under § 1681s-2(a)(8) for failure to conduct a proper investigation of a credit dispute, and (2) a claim under § 1681s-2(a)(1) for reporting erroneous information to a consumer reporting agency.   For both claims, he invokes the remedial provision of § 1681n.

- 14 -

Hunsinger does *not* plead any claims under § 1681s-2(b).  Although he cites § 1681s-2(b) in his summary judgment response, it is well established that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."  *Orthoflex, Inc. v. ThermoTek, Inc.*, ___ F.Supp.2d ___, 2013 WL 6061346, at *5 (quoting *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)).  "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'"  *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99, (2009)).  "Accordingly, district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment."  *Id.*  The court therefore concludes that any reference to § 1681s-2(b) as a grounds for alleging a FCRA claim against SKO must be disregarded.

B

Under the FCRA, violations of § 1681s-2(a) are enforced differently from those under § 1681s-2(b).  Section 1681s-2(c) provides:

> Except as provided in section 1681s(c)(1)(B) of this title, sections 1681n and 1681*o* of this title do *not* apply to any violation of—
>
> > (1) *subsection (a) of this section*, including any regulations issued thereunder;
> >
> > (2) subsection (e) of this section, except that nothing in this paragraph shall limit, expand, or

> otherwise affect liability under section 1681n or
> 1681*o* of this title, as applicable, for violations of
> subsection (b) of this section; or
>
> (3) subsection (e) of section 1681m of this title.

15 U.S.C. § 1681s-2(c) (first and fourth emphases in original; other emphasis added).

Section 1681s-2(d) incorporates the exceptions specified in § 1681s-2(c) and provides that

> [t]he provisions of law described in paragraphs (1) through (3)
> of subsection (c) of this section (other than with respect to the
> exception described in paragraph (2) of subsection (c) of this
> section) *shall be enforced exclusively as provided under section
> 1681s of this title by the Federal agencies and officials and the
> State officials* identified in section 1681s of this title.

15 U.S.C. § 1681s-2(d) (emphasis added).  Thus the FCRA explicitly provides that there is

no private right of action under § 1681s-2(a) and that enforcement of this subsection is to be

provided exclusively by government officials.  *See, e.g., Young v. Equifax Credit Info. Servs.,

Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) ("Section 1681s-2(c) . . . provide[s] an exception to

civil liability for failure to comply with Section 1681s-2(a) . . ., and Section 1681s-2(d)

provides that enforcement of Section 1681s-2(a) shall be by government officials." (citations

omitted)).

## C

Hunsinger's FCRA claims—which are explicitly based on § 1681s-2(a)(1) and

(8)—fail as a matter of law.  "Congress expressly limited . . . liability under § 1681s-2(a) by

prohibiting private suits for violations of that portion of the statute."  *Chiang v. Verizon N.E.

Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) (citing 15 U.S.C. § 1681s-2(c)(1)); *see also, e.g.,*

*Finegan v. Chase Home Fin., LLC*, 2012 WL 444046, at *3 (S.D. Tex. Feb. 10, 2012) ("There is no private cause of action under 15 U.S.C. § 1681s-2(a), which concerns the duty of furnishers of information to provide accurate information." (citations omitted)).  Because there is no private right of action for violations of § 1681s-2(a), SKO is entitled to summary judgment dismissing Hunsinger's FCRA claims.

D

Assuming *arguendo* that Hunsinger has pleaded a claim under § 1681s-2(b) and that a private cause of action exists under § 1681s-2(b),[12] the court holds in the alternative that Hunsinger has failed to create a genuine issue of material fact that SKO failed to comply with § 1681s-2(b).

Section 1681s-2(b) provides, in pertinent part: "After receiving notice pursuant to section 1681i(a)(2) . . . with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall [perform the duties prescribed by § 1681s-2(b)(1)(A)-(E)]."  As a result, the duties of a "furnisher of information" under § 1681s-2(b) attach only if the furnisher first receives notice from the

---

[12]The Fifth Circuit has declined to decide whether there is a private right of action under § 1681s-2(b).  *See Young*, 294 F.3d at 639 ("Nothing in these sections precludes a private right of action for violation of the investigation and reporting requirements of Section 1681s-2(b).  We need not decide, and do not decide, whether a private right of action exists against a furnisher of information[.]").  Most courts that have considered the question have recognized a private right of action under § 1681s-2(b) on the ground that, unlike § 1681s-2(a), it is not exempted by § 1681s-2(c) and (d).  *See, e.g., Chiang*, 595 F.3d at 34; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002).

consumer reporting agency in accordance with the procedure established by 15 U.S.C. § 1681i(a)(2).[13]   *See Young*, 294 F.3d at 639 ("Such notice is necessary to trigger the furnisher's duties under Section 1681s-2(b)."); *see also, e.g., Himmelstein v. Comcast of the Dist., L.L.C.*, 931 F.Supp.2d 48, 53 (D.D.C. 2013) ("There is no doubt . . . that [the defendant] must have received notice of the dispute from the [credit reporting agency] . . . in order for [the plaintiff] to recover under § 1681s-2(b)."). In other words, direct notification by the consumer does not trigger a furnisher's duties under § 1681s-2(b). *See Young*, 294 F.3d at 639 ("Thus, any private right of action [the plaintiff] may have under § 1681s-2(b) would require proof that a *consumer reporting agency* . . . had notified [the defendant] pursuant to § 1681i(a)(2).").

Here, the credit reporting agency is TransUnion. Assuming *arguendo* that Hunsinger is alleging a claim under § 1681s-2(b), he sues SKO as a furnisher of information. By his own admission, Hunsinger contacted TransUnion to dispute the tradeline on April 4, 2012, Trans Union received his notice on April 6, 2012, and TransUnion notified him on April 11, 2012 that it had deleted the account. Hunsinger has not presented any evidence that TransUnion failed to delete the account.

Under the procedure established by § 1681i(a)(2), TransUnion had up to five days to contact the furnisher of information about Hunsinger's dispute. *See* 15 U.S.C. § 1681i(a)(2).

---

[13]These two provisions work in tandem to create a "filtering mechanism" that ensures that furnishers of credit information are not "exposed to suit by any and every consumer dissatisfied with the credit information furnished." *Nelson,* 282 F.3d at 1060.

Hunsinger has failed to produce competent summary judgment evidence that SKO—assuming *arguendo* that it was a furnisher of information for this particular account—received notice from TransUnion pursuant to § 1681i(a)(2).  *See* 15 U.S.C. § 1681s-2(b)(1).  In support of his assertion that TransUnion notified SKO, Hunsinger offers three types of evidence, none of which would be admissible.  *See* Rule 56(c)(2), (c)(4).

First, he proffers an affidavit in which he avers that TransUnion told him that it had contacted SKO about the disputed account.  SKO moves to strike the affidavit on, *inter alia*, the ground that it is hearsay.  The court grants the motion to the extent that Hunsinger offers the affidavit to establish that TransUnion contacted SKO because, if offered for that purpose, it is hearsay.  *See* Fed. R. Evid. 801(c).

Second, Hunsinger presents what he refers to as "transcripts" of three telephone conversations with TransUnion: one dated August 21, 2013 and referring to a conversation with an "unknown representative," one dated September 19, 2013 and referring to "Jessica" and "Letisha," and one dated September 23, 2013 and referring to "Catherine" and "Carla." SKO moves to strike these transcripts on, *inter alia*, the ground that they are hearsay and cannot satisfy any of the exceptions in Rule 803(6).  The court grants the motion as to these transcripts because they are hearsay, and Hunsinger has not established that any hearsay exception applies.

Third, Hunsinger presents recordings of his telephone conversations with TransUnion. SKO moves to strike these recordings on, *inter alia*, the grounds that they are hearsay, and that the statements made by the TransUnion representatives are not based on personal

knowledge.  The court grants the motion as to the recordings because they are hearsay, and, in the alternative, because Hunsinger has not adduced evidence sufficient to support a finding that the TransUnion representatives had personal knowledge of whether TransUnion notified SKO pursuant to 15 U.S.C. § 1681i(a)(2), *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Not only does Hunsinger not present any other evidence to support his assertion, he submits evidence in support of his motion under Rule 56(d) to stay summary judgment and continue discovery that contradicts the assertion that TransUnion notified SKO.  As the court explains below, *see infra* § VII(B), Hunsinger relies on the affidavit of David Emery ("Emery"), the Chief Operations Officer of TransUnion, in which Emery avers that "TransUnion *did not contact* the furnisher of the information, SKO . . ., to verify the accuracy of the account" but "[i]nstead, TransUnion deleted the item from Hunsinger's file, pursuant to TransUnion's own internal business rule and Section 611(a)(1)(A) of the [FCRA]."  P. 1/6/2014 App. 4 (emphasis and alterations added).

Because Hunsinger has failed to produce competent summary judgment evidence that SKO received notice from TransUnion pursuant to § 1681i(a)(2), and because it is undisputed that the account in question was deleted before the end of the five-day period established by § 1681i(a)(2)(A), Hunsinger has failed to create a genuine issue of material fact that SKO failed to comply with § 1681s-2(b).

V

The court now turns to SKO's motion for summary judgment addressed to Hunsinger's TDCPA claim.

A

SKO moves for summary judgment on Hunsinger's TDCPA claim on the ground that the claim is preempted by the FCRA, or, alternatively, that Hunsinger has not produced evidence that SKO continued collection activity after he requested verification of the debt. Hunsinger does not specifically respond to the preemption argument. He relies on the same evidence and conclusory assertions discussed above to establish that SKO engaged in collection activity after he sent his initial notice disputing the debt and requesting verification.

B

The court begins by clarifying the claims at issue. In his third amended complaint, Hunsinger invokes § 392.202, (b), and (e), and also § 392.301(a)(3) of the Texas Finance Code.[14] According to Hunsinger, SKO violated the following provisions: (1) § 392.202, "by not initiating an investigation of the dispute and by not ceasing collection efforts of the debt," 3d Am. Compl. ¶ 26; (2) § 392.202(b), "by not sending a written statement to the individual as required by law," *id.* at ¶ 26; (3) § 392.202(e), "by reporting derogatory information in Plaintiff's credit profile without informing the individual of the determination of whether the

---

[14]Section 392.001 *et seq.* of the Texas Finance Code merely codifies the TDCPA. It does not provide an independent cause of action.

item is accurate or inaccurate," *id.* at ¶ 27; and (4) § 392.301(a)(3), "in one or more of the following ways: deceptive means to collect a debt or obtain information concerning a consumer by continued collection activity in Plaintiff's credit profile without sending verification of a debt when it was disputed by the Plaintiff," *id.* at ¶ 28.  He incorporates by reference the factual assertions made in connection with his claims under the FDCPA and the FCRA, and he does not allege any new factual content in support of his TDCPA allegations.  Thus the court understands Hunsinger to make the following TDCPA claims that fall into four analytical categories: (1) that SKO failed to cease collection efforts after receiving Hunsinger's notice disputing the debt and requesting validation; (2) that SKO failed to respond to Hunsinger's debt-verification request; (3) that SKO, as a furnisher of credit information, reported derogatory information and failed to determine the accuracy of the information, and (4) that SKO used a deceptive means to collect a debt or obtain information.

C

The court first considers categories (1) and (2), which rely on the factual predicates that SKO failed to cease collection efforts and failed to respond to Hunsinger's debt-verification notice.  The first sentence of § 392.202(a) states: "An individual who disputes the accuracy of an item that is in a third-party debt collector's or credit bureau's file on the individual and that relates to a debt *being collected* by the third-party debt collector may notify in writing the third-party debt collector of the inaccuracy."  Tex. Fin. Code Ann. § 392.202(a) (West 2006) (emphasis added).  By its plain language, the statute only applies

where the debt collector is currently attempting to collect on the debt. Subsections (b) and

(e) establish rules by which a debt collector must investigate and report the results of its

investigation to the consumer, but they only apply when the consumer can satisfy the

statute's requirement that the dispute relate to a debt "being collected." *See id.* § 392.202(a)-

(b), (e) (West 2006). As discussed above, Hunsinger has failed to create a genuine issue of

material fact that SKO engaged in collection activity after receiving his verification request.

*See supra* § III(C)(2). Accordingly, SKO had no duty to investigate or respond to

Hunsinger's verification request.

Additionally, it is undisputed that TransUnion deleted the account from Hunsinger's

credit report within five days of receiving notice, which also establishes that SKO had no

duty under § 392.202 to investigate or respond to Hunsinger's debt-verification request. *See*

*Bashore*, 452 Fed. Appx. at 524 ("[The] complaint, however, verifies that [the plaintiff]

received notice from TransUnion . . . regarding the results of [its] investigation of the debt

reported by [the defendant]. Thus, the district court did not err in dismissing [the plaintiff's]

TDCPA claim."). The court therefore holds that SKO is entitled to summary judgment

dismissing Hunsinger's TDCPA claim to the extent it is based on § 392.202(a), (b), or (e).

D

The court next considers category (3), which relies on the theory that SKO is liable

under the TDCPA as a furnisher of credit information. The FCRA, as amended in 1996,

provides that, subject to certain exceptions, state laws regulating the collection, distribution,

and use of consumer credit information are not preempted unless they are inconsistent with

- 23 -

the federal act.  *See* 15 U.S.C. § 1681t(a).  One of these exceptions, however, is § 1681s-2, which "relat[es] to the responsibilities of persons who furnish information to consumer reporting agencies[.]"  *Id.* § 1681t(b)(1)(F).  Thus, when read together, § 1681t(a) and (b)(1)(F) explicitly preempt state laws that regulate furnishers of credit information.[15]  *See, e.g., Ross v. FDIC*, 625 F.3d 808, 813 (4th Cir. 2010) (holding that plaintiff's state-law claim against defendant as furnisher of credit information was "squarely preempted by the plain language of the FCRA").  SKO is therefore entitled to summary judgment dismissing Hunsinger's TDCPA claim to the extent it is based on SKO's purported liability as a furnisher of credit information.

E

The court now turns to category (4), which is based on the theory that SKO engaged in deceptive means to collect a debt or obtain information.  Hunsinger does not appear to rely on this basis in his response to summary judgment because he does not attempt to show that any of SKO's actions was deceptive.  He has therefore failed to designate specific facts showing that there is a genuine issue for trial.  Accordingly, SKO is entitled to summary judgment dismissing Hunsinger's TDCPA claim to the extent it is based on the allegation that SKO engaged in deceptive means.

---

[15]There is an exception to the exception: particular state statutory laws of Massachusetts and California are not preempted under these provisions.  *See* 15 U.S.C. § 1681t(b)(1)(F)(i)-(ii).  This exception to the exception is not at issue here.

F

In sum, Hunsinger has failed to create a genuine issue of material fact as to a legally viable theory of liability under the TDCPA.  SKO is therefore entitled to summary judgment dismissing Hunsinger's TDCPA claim.

VI

SKO moves for summary judgment on Hunsinger's DTPA claim, contending that Hunsinger does not have standing to bring such a claim because he is not a "consumer" within the meaning of the DTPA.  Hunsinger responds by asserting in conclusory fashion that he is a DTPA "consumer."

It is unclear whether Hunsinger's DTPA claim is exclusively a derivative claim based on his TDCPA claim or is predicated on an alleged violation of the DTPA that is independent of his TDCPA claim.  As to the first possibility, a plaintiff can bring a cause of action under the DTPA if granted that right by another law.  *See* Tex. Bus. & Com. Code Ann. § 17.50(h) (West 2011).  And a violation of the TDCPA constitutes a deceptive trade practice that is actionable under the DTPA.  *See, e.g., Woods v. Bank of Am., N.A.*, 2012 WL 1344343, at *7 (N.D. Tex. Apr. 17, 2012) (Boyle, J.) (citing Tex. Fin. Code Ann. § 392.404 (West 2006)).  But the court has already concluded that Hunsinger has failed to create a genuine issue of material fact as to a legally viable theory of liability under the TDCPA.  *See supra* § V(F).  Accordingly, Hunsinger cannot rely on his underlying TDCPA claim to recover

- 25 -

under the DTPA.[16]

Concerning the second possibility—that Hunsinger's claim is independent of his TDCPA claim—the DTPA's protections only apply to "consumers" within the meaning of § 17.45(4). *See* Tex. Bus. & Com. Code Ann. §§ 17.50 (providing that "[a] consumer may maintain an action") & 17.45(4) (defining "consumer"). "To qualify as a 'consumer' under the DTPA, a plaintiff must (1) seek or acquire goods or services [by purchase or lease] and (2) the goods or services purchased or leased must form the basis of the complaint." *Choe v. Bank of Am., NA*, 2013 WL 3196571, at *8 (N.D. Tex. June 25, 2013) (Fitzwater, C.J.) (citing *Walker v. FDIC*, 970 F.2d 114, 123 (5th Cir. 1992) (Texas law)). Section 17.45 makes clear that the goods or services must be "purchased or leased." Tex. Bus. & Com. Code Ann. § 17.45(1) (defining "goods" as "tangible chattels or real property purchased or leased for use") & 17.45(2) (defining "services" as "work, labor, or service purchased or leased for use"). Hunsinger has not presented any evidence that he sought or acquired goods or services by purchase or lease from SKO. Assuming *arguendo* that a request to remove a contested debt can constitute a "service," Hunsinger's request still fails as a matter of law because he has not offered any evidence that he sought this service from SKO by purchase or lease. As a result, Hunsinger has not created a genuine issue of material fact that he is a

---

[16]Because the court is concluding that SKO is entitled to summary judgment dismissing Hunsinger's TDCPA claim, it does not reach SKO's alternative argument that Hunsinger lacks standing to sue under the "tie-in" provision of the DTPA because he is not a consumer. The court, however, addresses the "consumer" requirement to the extent the DTPA claim is asserted as a stand-alone claim, independent of the TDCPA claim.

consumer under the DTPA, and SKO is entitled to summary judgment dismissing his DTPA claim.[17]

## VII

By separate motion, Hunsinger moves under Rule 56(d) to stay summary judgment and continue discovery so that he can obtain evidence to respond to SKO's summary judgment motion.   SKO opposes the motion, contending that some of the discovery Hunsinger seeks has already been produced, and that Hunsinger has failed to show how additional discovery will allow him to create a genuine issue of material fact on any of his claims.

## A

"[Rule 56(d)] is an essential ingredient of the federal summary judgment scheme and provides a mechanism for dealing with the problem of premature summary judgment motions."   *Parakkavetty v. Indus. Int'l Inc.*, 2004 WL 354317, at *1 (N.D. Tex. Feb. 12, 2004) (Fitzwater, J.) (citing *Owens v. Estate of Erwin*, 968 F. Supp. 320, 322 (N.D. Tex. 1997) (Fitzwater, J.) (referring to former Rule 56(f)).   Under Rule 56(d), the court can "(1) defer considering the [summary judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order,"

---

[17]Because the court concludes that SKO is entitled to summary judgment on Hunsinger's claims under the TDCPA and DTPA for reasons related to liability, the court does not reach SKO's alternative argument that Hunsinger has failed to allege actual damages, economic damages, or damages for mental anguish in connection with these claims.

provided the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d). Rule 56(d) functions as a "safe harbor" that has been "built into the rules so that summary judgment is not granted prematurely." *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 136 (5th Cir. 1987) (referring to Rule 56(f)). It is "usually invoked when a party claims that it has had insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party." *Id.* Rule 56(d) offers relief where the nonmovant has not had a full opportunity to conduct—not to complete—discovery. The two concepts are distinct. *See McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991) (per curiam) (citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1985)) (rejecting nonmovant's contention that district court abused its discretion by failing to permit him to complete discovery before granting summary judgment, and holding that "Rule 56 does not require that discovery take place before granting summary judgment").

"[Rule 56(d)] motions are broadly favored and should be liberally granted." *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006). Nevertheless, to warrant a continuance for purposes of obtaining discovery, "a party must indicate to the court by some statement . . . why [it] needs additional discovery and *how* the additional discovery will create a genuine issue of material fact." *Stults v. Conoco, Inc.*, 76 F.3d 651, 657-58 (5th Cir. 1996) (quoting *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993) (internal quotation marks omitted)). It is not sufficient for a summary judgment nonmovant to allege that discovery is incomplete or that discovery will produce needed but unspecified facts. *See*

*Washington*, 901 F.2d at 1284-85.  The party must demonstrate "how the additional time will enable [it] to rebut the movant's allegations of no genuine issue of fact." *Id.* at 1286 (quoting *Weir v. Anaconda Co.*, 773 F.2d 1073, 1083 (10th Cir. 1985) (internal quotation marks omitted)).  A nonmovant is not entitled to a continuance if it "fail[s] to explain what discovery [it] did have, why it was inadequate, and what [it] expected to learn from further discovery" and gives only "vague assertions of the need for additional discovery." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999) (in part quoting *Reese v. Anderson*, 926 F.2d 494, 499 n.5 (5th Cir. 1991) (internal quotation marks omitted)).

B

Hunsinger seeks the following additional discovery: (1) SKO's communications with TransUnion; (2) information about the amount sought by SKO; (3) authority for the amount claimed by SKO; (4) all collection notes and collection logs regarding Hunsinger; (5) information about SKO's collection practices, procedures, methods, techniques, and strategies used in its effort to collect debts; (6) SKO's procedures "to avoid violations of the FDCPA, FCRA, and [TDCPA]"; and (7) instructions given to TransUnion to collect a debt against Hunsinger.  P. 1/6/2014 Mot. 3.  But discovery related to (1)-(4) and (7) has already been produced.  And Hunsinger has failed to explain why discovery related to (5)-(6) would create a genuine issue of material fact on any of his claims.

Hunsinger attempts to show that he has obtained additional discovery since he filed his response to summary judgment that demonstrates his entitlement to a continuance.  In support of his motion to stay summary judgment, Hunsinger attaches an affidavit from

Emery, TransUnion's Chief Operations Officer, in which Emery avers:

> In response to Hunsinger's April 11, 2012 dispute of the accuracy of an SKO . . . collection agency item on his TransUnion credit report, account number [account number stated], TransUnion did not contact the furnisher of the information, SKO . . ., to verify the accuracy of the account. Instead, TransUnion deleted the item from Hunsinger's file, pursuant to TransUnion's own internal business rule and Section 611(a)(1)(A) of the [FCRA].
>
> Also pursuant to Section 611(a)(5)(A)(ii) of the FCRA, after it deleted the item, TransUnion notified SKO . . . by letter that the item was removed.

P. 1/6/2014 App. 4 (alterations added).  Hunsinger points to the second paragraph above, arguing that it is evidence that creates a genuine issue of material fact that SKO had a duty to investigate under 15 U.S.C. § 1681s-2(b).  Not only does this evidence not create a genuine issue of material fact, it *affirmatively supports* SKO's position as to why it is not liable under § 1681s-2(b)—assuming *arguendo* that Hunsinger's third amended complaint can even be construed to plead such a claim.  *See supra* § IV(A).  As explained above, the duties of a furnisher of credit information under § 1681s-2(b) attach only if the furnisher receives notice from the credit reporting agency pursuant to § 1681i(a)(2).  *See Young*, 294 F.3d at 639.  Emery avers that "TransUnion did not contact the furnisher of the information, SKO . . ., to verify the accuracy of the account."  P. 1/6/2014 App. 4.  This is evidence that SKO never received the notice that is necessary to trigger its duties under § 1681s-2(b).  Hunsinger ignores this paragraph in Emery's affidavit and points to the fact that TransUnion notified SKO that the item was removed.  But this notification, which occurred after the item

had already been deleted, was not made pursuant to § 1681i(a)(2), and consequently, did not trigger any duties on the part of SKO under § 1681s-2(b).

Thus Hunsinger has failed to demonstrate why he needs additional discovery or how the additional discovery would create a genuine issue of material fact as to any of his claims. For the most part, Hunsinger relies on vague and unsupported assertions that the discovery he seeks will produce a genuine issue of material fact. The one specific assertion he makes—which relates to his claims under 15 U.S.C. § 1681s-2(b)—is supported by evidence that actually reinforces SKO's position that it is entitled to summary judgment on Hunsinger's claims. Hunsinger's motion under Rule 56(d) is therefore denied.

VIII

The court now considers SKO's request for attorney's fees.

A

SKO requests attorney's fees under two provisions of the FCRA, contending that Hunsinger has proceeded in "bad faith" within the meaning of 15 U.S.C. §§ 1681n (civil liability for willful noncompliance) and 1681*o* (civil liability for negligent noncompliance). Both sections establish the same standard for assessing attorney's fees:

> Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper.

*Accord* 15 U.S.C. § 1681n, *with id.* § 1681*o*.

SKO attempts to show bad faith in two ways.  First, it argues that bad faith can be inferred because SKO's motion to dismiss explained the defects with Hunsinger's FCRA claims and Hunsinger reasserted the same claims after the court gave him the opportunity to replead.  Second, it cites three State Bar grievances that Hunsinger has filed against several of SKO's attorneys.  In two of the grievances, Hunsinger falsely avers that SKO's attorneys were appointed to represent him and that they engaged in barratry[18] before the court.  In the third grievance, Hunsinger accuses one of SKO's attorneys of violating Rule 26(a) by not including information in SKO's initial disclosures.  For each grievance, the State Bar determined that the grievance was meritless, classified the matter as an inquiry only, and dismissed the complaint.[19]

B

The court holds that SKO is not entitled to recover attorney's fees under 15 U.S.C.

---

[18]"Barratry," in the non-maritime context, means "vexatious incitement to litigation, especially by soliciting potential legal clients."  *Black's Law Dictionary* 170 (9th ed. 2009).

[19]Hunsinger moves under Rule 56(c)(4) and Fed. R. Evid. 602 and 1002 to strike the affidavit of Mark Aschermann, Esquire ("Aschermann"), who is one of the attorneys representing SKO in this matter.  The court denies the motion as to the Aschermann affidavit. SKO offers Aschermann's testimony merely to authenticate several exhibits, including parts of an affidavit that Hunsinger alleges to have sent TransUnion, parts of an affidavit that Hunsinger alleges to have received from TransUnion, Hunsinger's Rule 26 disclosures, and three State Bar grievances received by Aschermann's office.  Hunsinger does not object to the authenticity or accuracy of any of these exhibits.  Aschermann's affidavit satisfies Rule 56(c)(4) and Fed. R. Evid. 602 because it is made on personal knowledge, sets out facts that would be admissible in evidence, and shows that Aschermann is competent to testify on the matters stated.  Aschermann's affidavit satisfies Fed. R. Evid. 1002 because none of his statements is offered to prove the contents of any particular exhibit.

§§ 1681n and 1681*o* because it has not shown that Hunsinger has proceeded in bad faith. When Hunsinger amended his complaint, he changed his allegations in an attempt to cure the defects that the court identified in *Hunsinger I.*  Although these changes failed to cure some of the defects that the court identified, the fact that he repleaded the claims is not a sufficient basis to infer bad faith.

As for the State Bar grievances, the court acknowledges that Hunsinger's material misrepresentation in two grievances that SKO's attorneys were appointed *to represent him*, and the fact that all three grievances were frivolous, are serious matters that warrant disapprobation.   But these grievances are too attenuated from the subject matter of Hunsinger's FCRA claims to persuade the court that Hunsinger was engaged in bad faith when prosecuting his FCRA claims.  The court therefore denies SKO's request for attorney's fees.

## IX

The court now turns to Hunsinger's motion for leave to file an amended complaint.

## A

Nearly four months after SKO moved for summary judgment, Hunsinger moved for leave to file a fourth amended complaint.[20]  He argues that he is entitled to "the amendment . . . as a matter of right," that he does not make the request in bad faith, and that amendment will not cause prejudice or undue delay.  P. 3/14/2014 Mot. 2.  SKO opposes the motion.

---

[20]As discussed *supra* at note 2, Hunsinger did not file a second amended complaint, so this complaint would actually be Hunsinger's third amended complaint.

B

Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Garcia v. Zale Corp.*, 2006 WL 298156, at *1 (N.D. Tex. Feb. 1, 2006) (Fitzwater, J.) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). When, as here, "a party files a motion for leave to amend by the court-ordered deadline, there is a 'presumption of timeliness.'" *Pyramid Transp., Inc. v. Greatwide Dall. Mavis, LLC*, 2012 WL 5875603, at *2 (N.D. Tex. Nov. 21, 2012) (Fitzwater, C.J.) (quoting *Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL 206454, at *1 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.)). "Granting leave to amend . . . 'is by no means automatic.'" *Hoffman v. L & M Arts*, 2012 WL 4321739, at *4 (N.D. Tex. Sept. 21, 2012) (Fitzwater, C.J.) (quoting *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (internal quotation marks omitted)). In deciding whether to grant leave to amend, "[t]he court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Id.*

C

Although Hunsinger's motion for leave is timely, several other factors compel the conclusion that his motion should be denied. When leave to amend is sought after a summary judgment motion has been filed, courts routinely decline to permit the moving party to amend. As the Fifth Circuit has recognized, "'[t]o grant . . . leave to amend is potentially

to undermine [a party's] right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint. . . .  A party should not, without adequate grounds, be permitted to avoid summary judgment by the expedient of amending [his] complaint.'" *Overseas Inns S.A. P.A. v. United States*, 911 F.2d 1146, 1151 (5th Cir. 1990) (quoting this court's opinion below), *aff'g* 685 F. Supp. 968 (N.D. Tex. 1988) (Fitzwater, J.). Here, Hunsinger filed his motion for leave to amend nearly four months after SKO filed its motion for summary judgment.  The parties had long since completed briefing on the motion, and it was ripe for decision.  Moreover, the court previously granted Hunsinger leave to replead when it granted SKO's motion to dismiss.  *Hunsinger I*, 2013 WL 3949023, at *1. As discussed *supra* at § VIII(B), several of the defects identified in *Hunsinger I* were not cured when Hunsinger filed his "third amended complaint," and they appear to be incurable. In his motion, Hunsinger does not identify any new facts to support his allegations.  Indeed, so far as the court can determine, Hunsinger has merely rearranged his allegations and inserted new conclusory statements and citations.

Because Hunsinger has failed to show adequate grounds for amending his complaint, and because granting Hunsinger leave to amend would undermine SKO's right to prevail on a summary judgment motion that was prepared without reference to an unanticipated amended complaint, the court denies Hunsinger's motion for leave to file a fourth amended complaint.

- 35 -

\*   \*   \*

For the reasons explained, the court denies Hunsinger's motion for Rule 56(d) relief and his motion for leave to amend, grants SKO's motion for summary judgment, denies SKO's request for attorney's fees under the FCRA, and dismisses this action by judgment filed today.   In light of the foregoing, Hunsinger's December 16, 2013 motion to strike affidavit of Jon R. Lunn and Mark L. Aschermann is denied,[21] and SKO's December 16, 2013 motion to strike plaintiff's response to summary judgment evidence is granted in part and denied in part as moot.

**SO ORDERED.**

April 15, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

---

[21]SKO's objections to the appendixes filed by Hunsinger in support of his motion to strike affidavit of Jon R. Lunn and Mark L. Aschermann are denied as moot.